SELECTMEN OF SHERBURNE, PETITIONERS.

A member elect having died before the meeting of the legislature, but so soon previous to the fourth Monday of November, that there was not sufficient time to give the notice required by the by-laws of the town for a meeting on that day, without posting up the notice on the Lord's day, the house issued a precept to the town for a new election.

THE selectmen of Sherburne, after the assembling of the legislature, petitioned the house for a writ of election to be issued to them, for reasons set forth in their petition, and which are fully stated in the report of the committee on elections, to whom the petition was referred.

The report was as follows:—

" The legal voters of the town of Sherburne were duly convened on the second Monday of November last, for the purpose of electing a representative. At that meeting they made choice of the late Silas Stone, Esq. The election was duly recorded, the requisite notice given to the said Stone, and he was summoned to attend at the meeting of the present legislature. Six days after his election, the said Stone became deranged, and terminated his own existence. In consequence of this act a new choice became necessary; but the time between the day of his death and the fourth Monday of November was not sufficient to give the notice required by their by-laws for a second meeting, without posting up that notice on the Lord's day. It will, therefore, be apparent to this house, that the inhabitants of Sherburne, by reason of the premises, are deprived of a representative upon this floor without any fault on their part. The object of their petition is, to enable them to fill the vacancy occasioned by the death of their late representative elect.

It seems to the committee, that there is but one question involved in the consideration of the prayer of the memorialists, and it is this: Has this house the power to grant a precept for a new election to the town of Sherburne, in the case presented by their petition?

In order to arrive at a correct decision of this question, it is

necessary to examine the constitutional compact, for the pur-

necessary to examine the constitutional compact, for the pur-
pose of ascertaining what limitations there are, if any, to the
general principle, that towns have a right to be represented in
this house.   The committee are not aware of any that bear
directly upon this question, and they would not hesitate to
answer it affirmatively, but for a doubt intimated in an opinion
of the justices of the supreme judicial court, transmitted to this
house during the May session of the year one thousand eight
hundred and twenty-six.  The doubt may have been unintention-
ally raised on their part.   The court were then considering the
case of a member of this house elected to the council, and de-
cided that the vacancy might be filled.   In that opinion, they
intimate that it may be different in the case of the death of a
member. If that doubt rests upon the 2d article of the sixth chap-
ter of the constitution, the committee can only say, that they do
not see that it is at all conclusive on that point.   They believe it
relates mainly to the incompatibility of offices, and was in-
tended to settle doubts as to the right of individuals to hold
seats in the legislature, while they were members either of the
executive or judicial branch of the government.   And with-
out this provision, questions would have arisen in cases where
members of the house were appointed or elected to executive
or judicial stations.   The spirit of all free governments forbids
the executive and judicial departments from exercising the
legislative power.   Consequently, the office of councillor is
inconsistent with that of a representative upon this floor.   And
in case a member is elected from this body to the council, the
town have a right to fill the vacancy by a new election.   It is
to be observed here, that in the article giving authority to fill
vacancies in certain cases, there is no prohibitory clause super-
added, forbidding the exercise of the right in other cases.   The
principle that induced the framers of the constitution to insert
the provision seems to have been this.   The town, having
manifested their desire to be represented by the election of a
member, are nevertheless defeated, without any neglect or fault
of theirs.   It is the interposition of a higher civil authority
than their own—and one over which they have no control—

that produces a result adverse to their wishes. And for this reason they are of right empowered to fill the vacancy. And by parity of reasoning, whenever the government of the United States has appointed a member of this house to an office incompatible with that of a legislator upon this floor, the house have issued a precept for a new election.

If the committee are right in their assumption of the principle laid down above, what bearing has it upon the question at issue, raised by the petition of the selectmen of Sherburne?

The town have manifested their wish to be represented. They have elected a member; he was duly notified thereof, and summoned to attend at the meeting of the present house of representatives; but here a higher authority than that of a mere earthly tribunal is interposed. And that authority—before which ' the pride of princes and the strength of kings must bow '—has willed it otherwise. The vacancy in this case is owing to the death of the late member elect. The cause the inhabitants of Sherburne could neither see nor control. Why then should they be deprived of the exercise of their right of representation? The committee can see no good reason for such a decision.

There is yet another view of the power of the house in this case. The constitution has made it the sole judge of the validity of the election of its members. From its decision there can be no appeal. If, then, the house shall deem this a proper occasion to issue a precept for a new election, that election, with their sanction, will be valid. Of course, the house would never exercise the power upon this ground, unless justified by the principles of sound policy, as well as the principle of virtue, upon which a republican government only can be based.

In conclusion, the committee recommend, that the prayer of the petitioners should be granted."

This report was agreed to, and a precept issued accordingly for a new election.[1]

---

[1] 60 J. H. 101, 109.